# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JONATHAN ELWOOD WALKER, SR.,    )
    )
         Petitioner,    )
    )
      v.    )        1:11CV128
    )
JOSEPH B. HALL,    )
    )
         Respondent.    )

## MEMORANDUM OPINION AND ORDER

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 2; Docket Entry 11-1.)[1] For the reasons that follow, the Court will deny relief.

## I. Background

A jury in the Superior Court of Rockingham County found Petitioner guilty of attempted first-degree murder and shooting into an occupied vehicle in cases 07 CRS 50962 and 07 CRS 1984. (Docket Entry 2, ¶¶ 1, 2, 4-6; Docket Entry 8, Ex. 1 at 1-4, 6-13.)[2] He received a consolidated sentence of 151 to 191 months in prison. (Docket Entry 2, ¶ 3; Docket Entry 8, Ex. 1 at 12-13.) Petitioner unsuccessfully pursued a direct appeal. State v. Walker, No. COA08-1224, 197 N.C. App. 630 (table), 680 S.E.2d 271

---

[1] The Petition contains two grounds for relief. (Docket Entry 2, ¶ 12.) The Court thereafter granted Petitioner's Motion to Amend (Docket Entry 11) and deemed the three additional grounds for relief proffered by Petitioner (Docket Entry 11-1) to constitute part of the Petition. (Text Order dated Aug. 3, 2012.)

[2] Exhibit 1 to Docket Entry 8 consists of the record from Petitioner's direct appeal. Pin citations to said Exhibit refer to the numbers typed or stamped at the top of the pages after the cover page and table of contents.

(table), 2009 WL 1664035 (June 16, 2009) (unpublished), <u>disc.</u> <u>review denied</u>, 684 S.E.2d 39 (N.C. 2009). He then twice sought relief in state court via motions for appropriate relief ("MARs"). (Docket Entry 8, Exs. 7, 11.) The trial court denied each MAR and the North Carolina Court of Appeals denied certiorari on each occasion. (<u>Id.</u>, Exs. 8, 10, 12, 14.)[3]

Upon the dismissal by the North Carolina Supreme Court of a request for review (<u>id.</u>, Ex. 15), Petitioner filed his instant Petition in this Court (Docket Entry 2). Respondent thereafter sought summary judgment. (Docket Entry 7.) Petitioner not only responded (Docket Entry 10), but also moved to amend his Petition (Docket Entries 11, 12), which motion the Court allowed (Text Order dated Aug. 3, 2012). Respondent then sought summary judgment on the claims raised via amendment. (Docket Entry 14.) Petitioner responded to that second summary judgment motion (Docket Entry 18) and also filed multiple motions seeking to expand the record in connection with claims in the Petition (as amended) (Docket Entries 19, 20, 24, 62), as well as multiple motions (however labeled) that effectively propose the addition of new claims (Docket Entries 27, 29, 34, 37, 49, 61). The parties have consented to disposition of this case by a United States Magistrate Judge. (Docket Entry 21.)

## II. Facts

The facts of Petitioner's underlying criminal case, as set out by the North Carolina Court of Appeals, appear as follows:

---

[3] The Petition mistakenly identifies one of the instances in which Petitioner requested certiorari review in the North Carolina Court of Appeals as a separate collateral attack. (<u>See</u> Docket Entry 2, ¶ 11(b).)

Gary Tilley and his uncle, Cliff Tilley, lived in a mobile home located at 371 Settlement Loop Road in Stoneville, North Carolina. [Petitioner] and his wife, Patsy Walker, lived in a nearby home also on the property. On 31 March 2007, Gary and his friends, Frankie and Steve, gathered at Gary's home to do some work. Gary, Frankie, Steve, and Cliff intended to have a cookout after the work was finished. At some point before the cookout began, [Petitioner] and Patsy walked over to Gary's house. While Cliff stayed home to prepare for the cookout, Gary, Frankie, Patsy, and [Petitioner] left in Gary's truck to go buy drinks, bread, and cigarettes at Citgo.

When they arrived at Citgo, [Petitioner] got out of the truck and started fighting with some people. Gary got [Petitioner] back into the truck and told Frankie to take [Petitioner] home. Gary told Frankie to tell Cliff to come pick Gary up. Cliff picked Gary up from the Citgo about eight minutes later. When Cliff and Gary arrived home, [Petitioner], Patsy, and Frankie were pulling out of the driveway in the white truck to go buy cigarettes at the store. Gary got into the truck to drive it, and Frankie moved over to the passenger's seat. On the way to the store, [Petitioner] and Patsy started fighting in the back seat. Gary pulled the truck over and told [Petitioner] that "he ought to hit on somebody his own size; he shouldn't be beating on his wife." [Petitioner] replied, "Well, I'll beat on you." Gary and [Petitioner] got out of the truck. Gary grabbed [Petitioner] and pushed him to the ground. Gary got back in the truck and took Frankie to Frankie's house. Gary then drove back home.

Cliff encountered [Petitioner] walking up the road and asked [him] what was going on. [Petitioner] replied, "You see Gary, you tell him I got something waiting on him." Cliff continued to his home and parked his vehicle.

As Cliff parked, Gary was in his truck in the driveway about ten or twelve feet behind Cliff. Just as Cliff was getting out of his vehicle, [Petitioner] "step[ped] out from behind the tree with a rifle and just start[ed] shooting at [Gary's] truck." Cliff saw [Petitioner] cock the rifle at least three times when [Petitioner] was walking up the driveway. Cliff asked [Petitioner], "[W]hat in the hell are you doing?" [Petitioner] did not respond and continued to shoot at the truck. Cliff testified that "all of a sudden, the truck just lunged forward. It started towards him and I both." Cliff ran

behind a nearby tree. The truck made a u-turn beside the tree and headed away across the field. [Petitioner] continued to shoot at the truck. The truck then stopped and Gary jumped out, put his hands up, and begged [Petitioner] not to shoot him. [Petitioner] shot at Gary again, and Cliff ran into his house. When Cliff got inside, he heard a shotgun go off and "it sounded like it was raining rocks and things hitting the trailer." Cliff called 911.

Bill Wade, a deputy sheriff with the Rockingham County Sheriff's Office, responded to the dispatch concerning gun shots being fired at 371 Settlement Loop Road. While waiting for backup, Wade heard a gun shot. When Deputy Jason Joyce arrived, Wade and Joyce entered the scene together. Wade observed Cliff taking cover next to a mobile home and flagging down Wade. Wade then observed [Petitioner] running away from the scene towards some bushes. [Petitioner] was apprehended and two unspent rifle cartridges were retrieved from [his] pants' pocket.

After securing [Petitioner], Wade entered [Petitioner's] home and found a 16-gauge single-barrel shotgun lying opened on the bed. [Petitioner] had some minor injuries to his face but declined medical attention. [He] smelled strongly of alcohol.

Cliff told Wade that [Petitioner] had fired at Gary while Gary was driving his truck to his home. Cliff stated that after initially being fired upon, Gary drove the vehicle into a field to avoid the gunfire. The truck stopped in the field approximately half-way between [Petitioner's] home and Cliff's home. When Gary got out of the truck, [Petitioner] chased Gary around the truck and fired an additional three to four shots at Gary.

Joyce located rifle shell casings in front of and to the side of Gary's truck and Deputy Jason Hutchins of the Rockingham County Sheriff's Office observed a bullet hole on the driver's side of the truck.

Walker, 2009 WL 1664035, at *1-2 (internal brackets omitted).

### III.  Claims

The Petition raises two claims. (Docket Entry 2, ¶ 12.) The first alleges that Petitioner's attempted first-degree murder indictment was defective. (Id. (Ground One).) The second asserts

that Petitioner's trial counsel acted ineffectively by failing to challenge the indictment's deficiency.  (Id. (Ground Two).)

Petitioner's accepted amendment presents three more claims. (See Docket Entry 11-1.)  The first such claim (Ground Three) requests relief because the trial court, while polling the jury as to the verdict, did not individually question the jurors about a note they sent to the trial court requesting leniency for Petitioner at sentencing.  (Id. at 1-2.)  Said claim also contends that Petitioner's trial counsel should have objected to the lack of such inquiry and Petitioner's appellate counsel should have pursued the issue on direct appeal.  (Id. at 2.)  The next claim (Ground Four) alleges that Petitioner's trial counsel rendered ineffective assistance by failing to call certain witnesses at trial.  (Id.) Petitioner's final claim (Ground Five) asserts that constitutional violations occurred in connection with three recordings of his jailhouse telephone calls.  (Id. at 3.)  As part of that claim, Petitioner also states that his appellate counsel performed ineffectively by not raising such issues on direct appeal.  (Id.)

## IV.  Habeas Standards

The Court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Further, "[b]efore [the] [C]ourt may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court.  In other words, the state prisoner must

give the state courts an opportunity to act on his claims before he presents those claims to [this] [C]ourt in a habeas petition. The exhaustion doctrine . . . is now codified at 28 U.S.C. § 2254(b)(1)." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

When a petitioner has exhausted state remedies, this Court must apply a highly deferential standard of review in connection with a habeas claim "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d). Specifically, the Court may not grant relief unless such adjudication "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. To qualify as "contrary to" United States Supreme Court precedent, a state court decision either must arrive at "a conclusion opposite to that reached by [the United States Supreme] Court [or] . . . confront[] facts that are materially indistinguishable from a relevant [United States] Supreme Court precedent and arrive[] at a result opposite to that reached by [the United States Supreme Court]." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "involves an unreasonable application" of United States Supreme Court case law "if the state court identifies the correct governing legal rule from [the United States Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see also id. at 409-11 (explaining that "unreasonable" does not mean merely "incorrect" or "erroneous").

## V. Discussion

### A. Ground One

In Ground One, "[P]etitioner contends the indictment for attempted first degree murder is fatally defective since it failed to allege the essential elements of the offense. Thus, these 5th, 6th amendment violations are reversible per se jurisdictional defects . . . ." (Docket Entry 2, ¶ 12, Ground One.)[4] Petitioner may challenge his attempted murder indictment only to vindicate the right guaranteed by the Fourteenth Amendment's "Due Process [Clause] and the Sixth Amendment requir[ing] notice that is sufficient to allow a reasonable defendant to prepare for trial," Stroud v. Polk, 466 F.3d 291, 297 (4th Cir. 2006); see also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (observing that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998) (holding that claim of "entitle[ment] to a new trial because the state court lacked jurisdiction over a [charge in an] indictment . . . rests solely upon an interpretation of [state] case law and statutes, [and thus] is simply not cognizable on federal habeas review"). That avenue provides little room for collateral attack in this Court because "deficiencies in state court indictments are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the

_____

[4] In this and other of his filings, Petitioner does not use standard capitalization conventions, but (for ease of reading), when quoting such filings, this Memorandum Opinion does.

-7-

[petitioner's] right to due process." Ashford v. Edwards, 780 F.2d 405, 407 (4th Cir. 1985); see also Locklear v. North Carolina, No. 1:07CV682, 2008 WL 4426167, at *3 (M.D.N.C. Sept. 24, 2008) (unpublished) ("[C]laims of this type, i.e., those alleging deficiencies in state court indictments, are not cognizable on federal habeas review, absent a showing that they rendered the entire state court proceeding fundamentally unfair."), appeal dismissed, 393 F. App'x 122 (4th Cir. 2010).

Here, Petitioner complains that the State utilized a so-called "short-form" indictment in his case, but that N.C. Gen. Stat. § 15-144 "limits its application to cases 'of' murder or manslaughter, [and that N.C. Gen. Stat. §] 15-144.1, dealing with [short-form indictments for] rape, and [N.C. Gen. Stat. §] 15-144.2 dealing with [short-form indictments for] sex offense, include 'attempt' within the statute whereas Section 15-144 does not." (Docket Entry 2 at 16 (first of four continuation pages as to Paragraph 12).) Petitioner, however, has failed to explain how his attempted murder indictment rendered his trial fundamentally unfair. (See id. at 16-19; Docket Entry 10 at 3-10, 13-14.) He points to no evidence of any prejudice, such as confusion over his charges or the elements that the State carried the burden of proving. (See id.) Further, North Carolina's "short-form" indictments generally meet federal constitutional standards. See Stroud, 466 F.3d at 295.

Moreover, Petitioner raised a parallel challenge in his second MAR (Docket Entry 8, Ex. 11 at 2-5) and the trial court rejected it

on the merits (id., Ex. 12).[5]  Petitioner has identified neither any unreasonable fact-finding underlying that ruling nor any United States Supreme Court precedent that said ruling contradicted or unreasonably applied.  (See Docket Entry 2 at 16-19; Docket Entry 10 at 3-10, 13-14.)  Ground One thus fails under Section 2254(d).[6]

## B.  Ground Two

Ground Two asserts that "ineffective assistance of counsel occurred due to [Petitioner's] trial attorney not objecting to, filling [sic] a motion to dismiss the defective indictment for attempted first degree murder."  (Docket Entry 2, ¶ 12, Ground Two.)  This same claim appeared in Petitioner's second MAR (id., Ex. 11 at 5-9) and the trial court denied it on the merits (id., Ex. 12).  Section 2254(d) thus applies.

The Fourth Circuit has described the United States Supreme Court authority governing ineffective assistance claims as follows:

> In order to establish an ineffective assistance of counsel claim . . ., [a petitioner must] establish that his "counsel's representation fell below an objective standard of reasonableness," measured by the "prevailing professional norms," [Strickland v. Washington, 466 U.S.

---

[5] "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, __, 131 S. Ct. 770, 784-85 (2011); see also Johnson v. Williams, ___ U.S. ___, ___, 133 S. Ct. 1088, 1096 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits . . . [and that] presumption is a strong one that may be rebutted only in unusual circumstances . . . ."); Cullen v. Pinholster, ___ U.S. ___, ___, 131 S. Ct. 1388, 1402 (2011) ("Section 2254(d) applies even where there has been a summary denial.").

[6] The above-detailed analysis renders moot Petitioner's related request(s) to expand the record to include state grand jury materials (see Docket Entry 19 at 4-5; Docket Entry 20 at 1-2; Docket Entry 24 at 1-2).  The Court therefore denies any portion of any motion(s) seeking such action.

668, 688 (1984)], and "that there is a reasonable
probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been
different," id. at 694. "Unless a [petitioner] makes
both showings, it cannot be said that the conviction or
. . . sentence resulted from a breakdown in the adversary
process that renders the result unreliable." Id. at 687.

In determining whether counsel's performance was
deficient, "[i]t is all too tempting for a [petitioner]
to second guess counsel's assistance after conviction or
adverse sentence, and it is all too easy for a court,
examining counsel's defense after it has proved
unsuccessful, to conclude that a particular act or
omission of counsel was unreasonable." Id. at 689.
Hence, "court[s] must indulge a strong presumption that
counsel's conduct falls within the wide range of
reasonable professional assistance . . . [and] that,
under the circumstances, the challenged action might be
considered sound trial strategy." Id. (internal
quotation marks omitted).

Similarly, in evaluating whether [a petitioner] has shown
actual prejudice from any such deficient performance, it
is insufficient for the [petitioner] "to show that the
errors had some conceivable effect on the outcome of the
proceeding," because "[v]irtually every act or omission
of counsel would meet that test." Id. at 693. Rather,
a "reasonable probability" that the result would have
been different requires "a probability sufficient to
undermine confidence in the outcome." Id. at 694. When
challenging a conviction, "the question is whether there
is a reasonable probability that, absent the errors, the
factfinder would have had a reasonable doubt respecting
guilt." Id. at 695.

Fisher v. Lee, 215 F.3d 438, 446–47 (4th Cir. 2000) (internal

parallel citations omitted).

"Surmounting Strickland's high bar is never an easy

task. . . . Even under de novo review, the standard for judging

counsel's representation is a most deferential one." Harrington v.

Richter, 562 U.S. 86, ___, 131 S. Ct. 770, 788 (2011) (internal

quotation marks omitted). Further, because "[t]he standards

created by Strickland and § 2254(d) are both highly deferential[,]

-10-

when the two apply in tandem, review is doubly so." Id. (internal citations and quotation marks omitted)); see also Cullen v. Pinholster, ___ U .S. ___, ___, 131 S. Ct. 1388, 1398 (2011) (observing that Section 2254(d) imposes "a difficult to meet and highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt" (internal citations and quotation marks omitted)). Put another way, "under the dual, overlapping lenses of [Section 2254(d)] and Strickland [the Court must] ask[] the following question: Was the [state court]'s holding incorrect to a degree that its conclusion was so lacking in justification that it was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement?" Moore v. Hardee, 723 F.3d 488, 496 (4th Cir. 2013) (internal brackets, ellipses, and quotation marks omitted).

Under this standard, Ground Two falls short. As explained in relation to Ground One, Petitioner's claim that the indictment violated the federal constitution could not survive review under Section 2254(d); an ineffective assistance claim predicated on such an alleged violation thus similarly fails. See, e.g., Weaver v. Warden, Lebanon Corr. Inst., No. 1:11CV218, 2012 WL 5439301, at *14 (S.D. Ohio Oct. 11, 2012) (unpublished) ("Because the [state court] reasonably determined that the underlying [federal constitutional] claim was without merit, the [state] court was not unreasonable in finding that [the] petitioner's appellate counsel was not ineffective for failing to raise the meritless claim."). Additionally, any challenge to the indictment that Petitioner's

counsel might have brought in the trial court based on state law could not have succeeded because the North Carolina Supreme Court had held well before Petitioner's trial (in 2008) that North Carolina law permitted short-form indictments for attempted murder, see State v. Jones, 359 N.C. 832, 835-39, 616 S.E.2d 496, 498-500 (2005). "[C]ounsel was not constitutionally ineffective in failing to object . . . [where] it would have been futile for counsel to have done so . . . ." Oken v. Corcoran, 220 F.3d 259, 269 (4th Cir. 2000). In sum, Petitioner cannot secure relief on Ground Two.

## C. Ground Three

As Ground Three, "Petitioner contends that a note from [the] jury to [the trial court] was not addressed in the right manner at Petitioner's trial or by counsels at trial or appeal." (Docket Entry 11-1 at 1.) More specifically, "Petitioner [has] ask[ed] the Court to review this jury note and decide if Petitioner's constitutional rights were violated by [the trial court] not properly polling the jury . . . . [The trial court] mentioned [the note] but never directly ask[ed] each juror about it [and instead asked] [o]nly was [] Petitioner guilty as charged." (Id. (emphasis in original).)[7] "Petitioner also contends that his trial lawyers [sic] failure to object and appeal [this issue] . . . violated Petitioner's Sixth Amendment [rights]." (Id. at 2.)

The note in question, which the jury apparently submitted along with the guilty verdicts, bears the signature of all twelve

---

[7] The record confirms that, at the request of Petitioner's trial counsel, the trial court polled the jurors individually and all stated that they assented to the guilty verdicts. (Docket Entry 15, Ex. 5 at 886-91.)

jurors and reads: "We, the jurors, respectfully request that term leniency be considered regarding the two charges of guilt in this case." (Docket Entry 8, Ex. 1 at 5.) The trial court informed the attorneys of the note and stated that she would "make note of that recommendation from the jurors and appreciate[d] their interest and concern." (Docket Entry 15, Ex. 5 at 894.)

In his first MAR, Petitioner did raise an issue related to the foregoing jury note, but not any claim that the trial court failed to properly poll the jury or that his trial and appellate counsel should have challenged the manner of polling. (See Docket Entry 8, Ex. 7 at 9-10.) Instead, Petitioner's first MAR asserted that the jury's submission of the note along with the guilty verdicts "amount[ed] to a compromised verdict, a practice that is strictly prohibited by our constitutions, and warrants reversal in this case by itself." (Id. at 9.) Alternatively, Petitioner's first MAR argued that "a chain of rulings from the U.S. Supreme Court could be construed to permit this jury's request [for leniency along with guilty verdicts], but only if the [trial] court were to comply [with the request for leniency], which [the trial court] did not." (Id. (citing Apprendi v. New Jersey, 530 U.S. 466 (2000), and Blakely v. Washington, 542 U.S. 296 (2004)); see also id. at 10 (claiming that Petitioner's "imprisonment term of 151 to 191 months must be reduced to 114 to 146 months in order to comply with these U.S. Supreme Court decisions").) Nor did Petitioner's second MAR present the claims he now has submitted within Ground Three of his Petition (as amended). (See Docket Entry 8, Ex. 11.)

Petitioner thus has not exhausted the claims in Ground Three and the Court cannot grant relief on any such claims. See 28 U.S.C. § 2254(b)(1).[8] Ground Three, however, "may be denied on the merits, notwithstanding the failure of [Petitioner] to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Because Petitioner has not identified (see Docket Entry 11-1 at 1-2; Docket Entry 12 at 2-5; Docket Entry 18 at 2-3)[9] (and independent research has failed to reveal) authority or any convincing rationale establishing that he possessed either a federal constitutional right or a right under North Carolina law to have the jurors individually polled about their recommendation of leniency, the claims in Ground Three (i.e., that the absence of such polling violated the United States Constitution and that the failure of counsel to challenge such lack of polling constituted ineffective assistance) lack merit. Accordingly, the Court denies Ground Three under Section 2254(b)(2).

### D. Ground Four

Ground Four states that "Jessica Cochran, Patsy Walker, Patsy Gail Woods, [and] Garland Dale Cochran . . . were at Petitioner's trial for testimoney [sic] but were not used by Petitioner's [trial

---

[8] Although Respondent did not raise non-exhaustion, but instead took the (mistaken, in the Court's view) position that "[G]round (3) was summarily adjudicated and rejected by the state court after Petitioner raised the substance thereof in his first [MAR]" (Docket Entry 15 at 2), "[a] State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement," 28 U.S.C. § 2254(b)(3). Mistakenly deeming the exhaustion requirement met does not constitute an express waiver of that requirement.

[9] Petitioner cited several cases in the latter two of his above-referenced filings; however, none shed any light on the issues raised in Ground Three.

counsel] . . . [in] violation of Petitioner's constitutional rights . . . ." (Docket Entry 11-1 at 2.) In his first MAR, Petitioner also argued that his trial counsel should have called those four individuals to testify at trial. (See Docket Entry 8, Ex. 7 at 3-5.) The trial court denied that claim on the merits. (Id., Ex. 8.) Accordingly, Section 2254(d) applies to Ground Four and, for reasons explained in Subsection V.B., "under the dual, overlapping lenses of [Section 2254(d)] and Strickland [the Court must] ask[] the following question: Was the [state court]'s holding [denying relief] incorrect to a degree that its conclusion was so lacking in justification that it was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement?" Moore, 723 F.3d at 496 (internal brackets, ellipses, and quotation marks omitted).

In scrutinizing the trial court's denial of relief based on the failure of Petitioner's trial counsel to call the witnesses at issue, this Court "must indulge a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy. The difficulty of overcoming that general presumption is even greater in this case, given that the decision whether to call a defense witness is a strategic decision demanding the assessment and balancing of perceived benefits against perceived risks, and one to which [the Court] must afford enormous deference." United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004) (internal citation, ellipses, and quotation marks omitted) (emphasis added); see also Cox v. United States, Nos. 3:05CR74,

3:08CV201, 2011 WL 3322590, at *6 (W.D.N.C. Aug. 2, 2011) (unpublished) ("The decision whether to call any witnesses . . . is a tactical decision of the sort engaged in by defense attorneys in almost every trial.  Such decisions also are entitled to great deference." (internal citation and quotation marks omitted)).

Within the body of Ground Four, Petitioner makes no meaningful attempt to overcome the foregoing presumption/deference; instead, he merely asserts in conclusory fashion that the witnesses' testimony "shows jury tampering, tampering with a defense witness, [and] prejudice in the courtroom . . . ." (Docket Entry 11-1 at 2.)  Petitioner's brief supporting Ground Four similarly offers only bald assertions that "the above witnesses testimony was needy and necessary for complusory process.  So [Petitioner] could have got a fair trial, and the testimonies would have made a different's [sic] in the jury verdict."  (Docket Entry 12 at 5.)  His brief opposing summary judgment on Ground Four takes the same approach. (See Docket Entry 18 at 3-4.)  Such perfunctory arguments do not suffice, particularly given the applicability of Section 2254(d). See Cullen, ___ U.S. at ___, 131 S. Ct. at 1398 (noting that Section 2254(d) imposes "a difficult to meet and highly deferential standard . . ., which demands that state-court decisions be given the benefit of the doubt" (internal citations and quotation marks omitted)).  Ground Four therefore warrants no habeas relief.[10]

---

[10] Petitioner included with the amendment to his Petition affidavits from the four potential witnesses.  (Docket Entry 11-1 at 12-15.)  A pro se litigant's right to liberal construction of his filings does not permit "the district court to assume the role of advocate for the pro se litigant. . . .  [A] court
(continued...)

## E.  Ground Five

In Ground Five, Petitioner complains about a "phone call that was not allowed in at the suppress [sic] hearing [when the trial court] allowed 2 other phone calls to be allowed in . . . .  Only two calls were used and they were used by the prosecution and the third call would have been used by the defense . . . but was not allowed in . . . ."  (Docket Entry 11-1 at 3; see also Docket Entry

---

[10](...continued)
ordinarily would be adopting precisely such an advocate's role, were it to undertake a searching examination . . . of all of a pro se litigant's filings – including his evidentiary submissions – with the aim of weaving together a substantive argument for relief that the litigant never made in his motion and other pleading."  United States v. Harris, 579 F. App'x 657, 661-62 (10th Cir. 2014).  Nonetheless, out of an abundance of caution, the Court has reviewed the affidavits in question and does not find therein any basis to conclude that the trial court unreasonably applied Strickland by rejecting Petitioner's parallel claim in his first MAR.  To the extent those witnesses' reports would have called into question the victim's credibility (by recounting his purported offer to retract his allegations against Petitioner in exchange for money), North Carolina law would not have permitted the introduction of such testimony.  See N.C. Gen. Stat. § 8C-1, Rule 608(b) ("Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence.").  As a result, Petitioner's related request(s) for the Court to expand the record to allow consideration of documents that allegedly would have bolstered the witnesses' testimony on this subject (see Docket Entry 20 at 3-4; Docket Entry 24 at 4-6) fail(s) for lack of good cause.  The Court similarly finds no grounds to conclude that the trial court would (or should) have admitted testimony before the jury that the victim allegedly spoke to a juror in a courthouse smoking area; moreover, one of the affiants acknowledged that the trial court received her report of that alleged interaction and explored the issue.  (See Docket Entry 11-1 at 13.)  In fact, the record reflects that:  1) the trial court allowed the proposed witnesses to identify the juror they claimed had communicated with the victim; 2) separately questioned that juror and the victim (both of whom denied any contact); and 3) concluded that no basis existed to find any impropriety. (See Docket Entry 15, Ex. 2 at 328-33, 383-85.)  Under these circumstances, any claim of prejudice by Petitioner regarding this matter constitutes, at best, rank speculation.  The remaining piece of proffered testimony concerns the victim's alleged statement that he "'beat the hell out of [Petititioner]' . . . [when Petitioner] dove into [the victim's] company truck and [that the victim] started to run over [Petitioner]" (Docket Entry 11-1 at 14) and that, at some later point, Petitioner "shot thru [the victim's] trailor [sic]" (id.).  The Court does not find that testimony recounting any such statement(s) would have carried such a strong prospect of altering the outcome of Petitioner's trial as to have required the trial court to grant relief in connection with Petitioner's first MAR, most notably because the proffered evidence does not substantially conflict with the facts shown by the State's evidence (summarized in Section II).

12 at 7 ("[T]he two phone calls that was [sic] used by the district attorney to convict [Petitioner] should have been suppressed because the calls was [sic] illegally obtained while [Petitioner] was being held in the county jail, and was talking to his wife on the phone."); Docket Entry 18 at 5 ("The third phone call would have proved that the alleged victim [] was trying to blackmail [] Petitioner . . . ."); Docket Entry 62 at 1-4 (indicating that Petitioner intended Ground Five to include claim that prosecution did not comply with <u>Brady</u> obligations as to third recording).) Ground Five also asserts that "Petitioners [sic] appeal lawyer not raising this ground on direct appeal is a violation of Petitioner's constitutional rights . . . ."  (Docket Entry 11-1 at 3.)

As part of his first MAR, Petitioner similarly alleged that:

[A] [t]hird recorded jail phone call which was illegally withheld by the state proves that [the victim] admitted to [Petitioner's] innocence to the attempted murder allegations; the trial court should have properly either insisted that the state produce the third phone call or suppress the first two since the prejudicial value against [Petitioner] far outweighed the probative value to the state, demonstrating abuse of discretion from the suppression hearing ruling.

(Docket Entry 8, Ex. 7 at 5-6.)  Petitioner's first MAR also argued that his appellate counsel provided ineffective assistance by failing to raise the foregoing issue(s) on direct appeal.  (<u>See</u> <u>id.</u> at 10-11.)  The trial court denied those claims on the merits. (<u>Id.</u>, Ex. 8.)  Accordingly, Section 2254(d) applies to the parallel claims raised by Petitioner in Ground Five.

Petitioner has not carried his burden of establishing that, in denying relief on his collateral claims regarding the telephone

recordings, the trial court relied on unreasonable factual findings and/or contravened/unreasonably applied United States Supreme Court precedent. As an initial matter, Petitioner has failed to point to any record material showing that the State concealed any recording from him. (See Docket Entry 11-1 at 3, 7-10; Docket Entry 12 at 6-8; Docket Entry 18 at 5-6; Docket Entry 62 at 1-4.) "It is not the [C]ourt's obligation on a habeas petition to comb the record in search of evidence to support a conclusory claim." Gleason v. Warden, Winn Corr. Ctr., No. 07CV1408, 2010 WL 2777272, at *6 (W.D. La. May 10, 2010) (unpublished), recommendation adopted, 2010 WL 2777267 (W.D. La. July 13, 2010) (unpublished); accord Johnson v. Parker, No. 1:06CV217-SA-JAD, 2008 WL 4683420, at *8 (N.D. Miss. Sept. 12, 2008) (unpublished). Moreover, Petitioner's own allegations refute any suggestion that the State concealed any recording and/or that the trial court kept him from utilizing any such recording; instead, Petitioner has admitted that he knew about the recording in question and that his trial counsel simply chose not to use it. (See Docket Entry 11-1 at 10; Docket Entry 12 at 6-7; see also Docket Entry 15, Ex. 3 at 726-29, 751-53 (documenting Petitioner's trial testimony about substance of alleged telephone conversation between Petitioner and victim).) This aspect of Ground Five thus falls short under Section 2254(d) (and, indeed, would fail even if considered de novo).[11]

---

[11] Petitioner's related ineffective assistance of appellate counsel claim also lacks merit, given the (above-described) patent deficiency of his underlying allegations regarding the third recording. See Carter v. Lee, No. 99-10, 202 F.3d 257 (table), 1999 WL 1267353, at *11 (4th Cir. Dec. 29, 1999) (unpublished) (continued...)

Nor can Petitioner secure habeas relief based on any claim that the trial court violated his constitutional rights by declining to exclude the other two jailhouse telephone recordings, because (by his own admission (Docket Entry 11-1 at 3)) Petitioner had the opportunity to litigate that matter in the trial court. See Stone v. Powell, 428 U.S. 465, 481-82 (1976); see also Grimsley v. Dodson, 696 F.2d 303, 304 (4th Cir. 1982) (observing that Stone "marked, for most practical purposes, the end of federal court reconsideration of Fourth Amendment claims by way of habeas corpus petitions where the petitioner had an opportunity to litigate those claims in state court"). Finally, Petitioner cannot establish that the trial court unreasonably applied Strickland when it rejected his claim that his appellate counsel provided ineffective assistance by failing to appeal the trial court's refusal to suppress the two recordings introduced by the State at trial. In that regard, the record confirms that a sign beside the jailhouse telephone Petitioner used and a message at the beginning of each

_____

[11](...continued)
("Appellate counsel [is] not ineffective for failing to raise [an issue] on appeal [that] is plainly without merit."). In light of the nature of the Court's determinations concerning the third recording, no good cause exists to support Petitioner's related requests to expand the record (see Docket Entry 19 at 2-3; Docket Entry 20 at 2-3; Docket Entry 24 at 3-4; Docket Entry 62 at 1-4) and the Court will deny any such part of any such motion(s). Further, Petitioner's conclusory assertion (improperly included in a motion to expand the record, see White v. Keller, No. 1:10CV841, 2013 WL 791008, at *3 (M.D.N.C. Mar. 4, 2013) (unpublished) (internal brackets and quotation marks omitted) (collecting cases establishing that, "when a habeas petitioner has not moved to amend his petition, the Court will not consider any allegations or arguments stemming from [a] new claim")) that his appellate counsel acted ineffectively by failing to make certain materials part of the direct appeal record (see Docket Entry 24 at 4) provides inadequate grounds for relief, see Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrogated on other grounds, Gray v. Netherland, 518 U.S. 152, 165-66 (1996); see also Harrington, 562 U.S. at ___, 131 S. Ct. at 788 ("[T]he standard for judging counsel's representation is a most deferential one.").

call notified him that monitoring/recording could occur. (Docket Entry 15, Ex. 3 at 570, 607.) Petitioner also acknowledged under oath that he knew about such monitoring/recording. (Id. at 723.)

Under these circumstances, the recordings at issue did not violate Petitioner's federal constitutional rights. See, e.g., United States v. Van Poyck, 77 F.3d 285, 291 (9th Cir. 1996) (ruling that "any expectation of privacy in outbound calls from prison is not objectively reasonable" and that use of jailhouse telephones after notice of recording constitutes consent vitiating any constitutional claim); Hill v. Donoghue, 815 F. Supp. 2d 583, 588 (E.D.N.Y. 2011) ("[The petitioner] admits that the [jailhouse] telephones played a recorded warning that calls may be recorded and monitored, which belies an actual expectation of privacy. And even if he did expect his conversation to be private . . . that expectation was not reasonable." (internal citation omitted)). Petitioner's ineffective assistance claim premised on his appellate counsel's decision to refrain from pursuing a direct appeal of the admission at trial of the two recordings thus fails as a matter of law. See, e.g., Ellison v. United States, Nos. 3:07CR30RJC, 3:10CV207RJC, 2013 WL 2480654, at *3 (W.D.N.C. June 10, 2013) (unpublished) ("[A]ny arguments made by counsel along the lines suggested by Petitioner would have been futile. Therefore, Petitioner has failed to establish a prima facie claim of ineffective assistance of counsel."); Walker v. United States, Civ. No. WDQ-10-2739, Crim. No. WDQ-07-0146, 2011 WL 4103032, at *3 (D. Md. Sept. 9, 2011) (unpublished) (ruling that where an argument

"would have been futile [a defendant's] appellate counsel was not ineffective for failing to raise it").

For all of the foregoing reasons, Ground Five affords no basis for habeas relief.[12]

## F. Motions Proposing Additional Claims

In a motion dated as signed by Petitioner on February 1, 2012 (see Docket Entry 27 at 9), and docketed by the Court on February 7, 2012 (see id. at 1), Petitioner sought to raise two new claims: 1) that the trial court's failure to give the jury the option of

_____

[12] In his brief supporting the amendment adding the above-discussed Grounds Three, Four, and Five, Petitioner purports to assert a different "Ground (5)," labeled "Tainted Jury." (Docket Entry 12 at 8.) As facts supporting that claim, Petitioner states: "The jury was tainted when a jury [sic] was seen talking to . . . [the] alleged victim [] during a resess [sic] . . . ." (Id. (citing Docket Entry 15, Ex. 2 at 328); see also Docket Entry 11-1 at 10 (declaring in attached affidavit that "[t]he jury was tainted when a juror was reported talking to [the victim]").) For reasons discussed in Footnote 10, any such claim lacks merit. Elsewhere in that same brief, Petitioner "contends that his constitutional rights to a fair trial and impartial trial was [sic] violated when the witnesses for the States [sic] case was suppost [sic] to be keep [sic] apart and not allowed to hear each others [sic] testimony. However [Petitioner's] rights were violated when the speaker was left on in the D.A.'s office where one of the witnesses were [sic] being held to testify, and the alleged victim was allowed to hear [another witness's] testimony." (Docket Entry 12 at 10.) After acknowledging that the trial court took corrective action deemed acceptable by his counsel when that matter came to light, Petitioner baldly declares that "the trial should have been stopped and a mistrial ordered, but trial counsel's actions by failing to object to these prejudice [sic] happenings violated [Petitioner's] 5th, 6th, 8th, and 14th Amend. rights . . . ." (Id.; see also Docket Entry 11-1 at 10 (stating in affidavit attached to amended claims that "[t]he jury was tainted when . . . the speaker was left on for [the victim] to hear [a witness's] testimony").) Such conclusory claims provide no basis for habeas relief. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrogated on other grounds, Gray v. Netherland, 518 U.S. 152, 165-66 (1996); see also Harrington, 562 U.S. at ___, 131 S. Ct. at 788 ("[T]he standard for judging counsel's representation is a most deferential one."). Other undeveloped allegations of ineffective assistance by trial counsel set out in affidavits Petitioner submitted with Grounds Three, Four, and Five (see Docket Entry 11-1 at 7-10) similarly fall short as a matter of law. Finally, Petitioner's attempt (in his second summary judgment response brief) to interject an ineffective assistance claim based on his trial counsel's alleged failure to make proper objections to jury instructions also fails as unduly conclusory, as well as procedurally defective, see White v. Keller, No. 1:10CV841, 2013 WL 791008, at *3 (M.D.N.C. Mar. 4, 2013) (unpublished) (internal brackets and quotation marks omitted) (collecting cases establishing that, "when a habeas petitioner has not moved to amend his petition, the Court will not consider any allegations or arguments stemming from this new claim").

convicting him of various assault offenses instead of attempted first degree murder violated his due process rights (see id. at 1-4); and 2) that the district attorney should have submitted lesser assault charges to the grand jury (see id. at 5-8). Subsequently, in a motion dated as signed by Petitioner on March 23, 2012 (see Docket Entry 29 at 5) and docketed by the Court on April 2, 2012 (see id. at 1), Petitioner proposed yet another new claim, i.e., that ineffective assistance by trial counsel caused Petitioner to reject a plea offer that would have resulted in a shorter sentence than he received following his trial (see id. at 1-5). By motion dated as submitted (but not signed) by Petitioner on March 4, 2013 (see Docket Entry 34 at 3) and received by the Court on March 8, 2013 (see id. at 1), Petitioner again sought to add such an ineffective assistance claim (see id. at 1-3).

Consistent with Gray v. Branker, 529 F.3d 220, 240-41 (4th Cir. 2008), the Court thereafter ordered Petitioner "to file a supplemental brief . . . addressing whether the matters he seeks to raise in [the foregoing motions] are barred by the applicable statute of limitations or by operation of a procedural bar." (Text Order dated Apr. 15, 2013.) Petitioner timely filed a brief (Docket Entry 36), along with a motion asking the Court to consider whether Trevino v. Thaler, ___ U.S. ___, 133 S. Ct. 1911 (2013), and Martinez v. Ryan, ___ U.S. ___, 132 S. Ct. 1309 (2012), permit his proposed, new ineffective assistance claim (Docket Entry 37). The Court later authorized Petitioner to file another brief

regarding statute of limitations and procedural bar issues (Text Order dated Nov. 18, 2013) and he did so (Docket Entry 41).

A habeas petition "may be amended . . . as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. Under said rules, "[a] party may amend its pleading once as a matter of course within:  (A) 21 days after serving it, or (B) . . . 21 days after service of a responsive pleading . . . ." Fed. R. Civ. P. 15(a)(1).  Because Petitioner tendered the motions at issue outside such periods (see Docket Entry 2 at 1 (documenting docketing of Petition on Feb. 17, 2011); Docket Entry 6 at 2 (reflecting submission of Respondent's Answer to Petition on Mar. 10, 2011)),[13] his proposed amendments can proceed "only with [Respondent's] written consent or the [C]ourt's leave," Fed. R. Civ. P. 15(a)(2).  Respondent has not given any such consent. (See Docket Entries dated Feb. 1, 2012, to present.)  As for leave of the Court, permission "to amend shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment." United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000).  Here, futility due to untimeliness and procedural bar warrants denial of leave to amend.  See Lowery v. United States, Nos. 3:09CV260RJC, 3:05CR216RJC, 2012 WL 2395192, at *3 (W.D.N.C. June 25, 2012) (unpublished) ("A cause of action barred by the applicable statute of limitations is futile; therefore, an untimely amendment can be denied on that basis." (citing Pittman, 209 F.3d

---

[13] Petitioner received the benefit of his one amendment as a matter of course in connection with his earlier-submitted addition of Grounds Three, Four, and Five. (See Text Order dated Aug. 3, 2012; see also Docket Entries 11, 11-1.)

at 317)), appeal dismissed, No. 12-7114, 2012 WL 5992225 (4th Cir. Dec. 3, 2012) (unpublished), cert. denied, ___ U.S. ___, 133 S. Ct. 2871 (2013); Ingram v. Buckingham Corr. Ctr., No. 3:09CV831, 2011 WL 836826, at *6 (E.D. Va. Mar. 4, 2011) (unpublished) ("Leave to amend is appropriately denied where the amendment would be futile, such as here, because the proposed amended claims are procedurally defaulted."), appeal dismissed, 468 F. App'x 236 (4th Cir. 2012).

As to timeliness, a one-year statute of limitations applies to federal habeas claims. 28 U.S.C. § 2244(d)(1). By statute:

[t]he limitation period shall run from the latest of --

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

Petitioner has not contended that the delayed accrual options provided by Subparagraphs (B) or (D) apply to the claims at issue. (See Docket Entries 27, 29, 34, 36, 37, 41.) As to his new ineffective assistance claim, Petitioner arguably has attempted to invoke Subparagraph (C) by referencing the decisions in Lafler v.

Cooper, ___ U.S. ___, 132 S. Ct. 1376 (2012), and Missouri v. Frye, ___U.S. ___, 132 S. Ct. 1399 (2012). (See Docket Entry 29 at 1, 4; Docket Entry 34 at 1, 2; Docket Entry 36 at 3, 5, 6; Docket Entry 37 at 2.) However, "[t]hese cases fail to warrant belated commencement under 28 U.S.C. § 2244(d)(1)(C) for newly recognized constitutional rights because Lafler and Frye 'simply discussed the constitutional right to effective assistance of counsel in the context of plea bargaining that defendants have enjoyed for decades.'" Tory v. Methena, No. 3:12CV905, 2013 WL 5739790, at *3 (E.D. Va. Oct. 22, 2013) (unpublished) (quoting Harris v. Smith, No. 1:13-cv-182-FDW, 2013 WL 3329050, at *1 (W.D.N.C. July 2, 2013) (unpublished), appeal dismissed, 548 F. App'x 79 (4th Cir. 2013), which in turn cited In re Perez, 682 F.3d 930 (11th Cir. 2012), and In re King, 697 F.3d 1189 (5th Cir. 2012)), appeal dismissed, 553 F. App'x 305 (4th Cir.), cert. denied, ___ U.S. ___, 134 S. Ct. 1564 (2014); accord Diaz v. Biter, No. CV 13-7745-SP, 2014 WL 3109849, at *4 (C.D. Cal. July 8, 2014) (unpublished); Sanchez v. Burns, ___ F. Supp. 2d ___, ___, 2014 WL 2194516, at *7 (E.D. Pa. 2014); Coulliette v. Secretary, Dep't of Corr., No. 5:12CV355MW/GRJ, 2014 WL 518936, at *3 (N.D. Fla. Feb. 10, 2014) (unpublished); Anthony v. Stephens, No. 2:13CV45, 2013 WL 3486916, at *2-3 (N.D. Tex. July 11, 2013) (unpublished); see also In re Graham, 714 F.3d 1181, 1182 (10th Cir. 2013) ("[E]very circuit court to consider the question has held that Frye and Lafler do not establish a new rule of constitutional law."). Accordingly, Subparagraph (A) applies to Petitioner's proffered new claims.

Pursuant to Subparagraph (A), Petitioner's convictions became final on November 25, 2009 (i.e., 90 days after the North Carolina Supreme Court declined to consider his case on direct appeal, Walker, 684 S.E.2d at 39).  See Clay v. United States, 537 U.S. 522, 527 (2003) (holding that "[f]inality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires" (internal citations omitted)); see also Sup. Ct. R. 13.1 (allowing 90 days to seek certiorari after ruling by highest state appellate court).  The federal limitations period then ran until June 15, 2010, when Petitioner filed his first MAR in the trial court (Docket Entry 2, ¶ 11(a)(3)), leaving him only 163 days.  The filing of Petitioner's first MAR tolled the deadline for any federal habeas claims for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)," Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999).  Petitioner's federal limitations period began to run again on August 24, 2010, when the North Carolina Court of Appeals denied his certiorari petition (Docket Entry 8, Ex. 10), and thus only 112 days remained when Petitioner filed his second MAR on October 14, 2010 (i.e., 51 days later) (Docket Entry 2, ¶ 11(c)(3)).  The next term of tolling ended on December 3, 2010,

when the North Carolina Court of Appeals again denied his certiorari petition. (Docket Entry 8, Ex. 14.)[14]

As noted above, Petitioner did not seek to present the proposed new claims until February 1 and March 23, 2012, respectively, far more than 112 days after December 3, 2010. Petitioner's proposed new claims thus qualify as timely under Section 2254(d)(1) only if they "relate back" to his Petition (submitted on February 15, 2011 (Docket Entry 2 at 15) or his prior amendment (submitted on March 15, 2011 (Docket Entry 11-1 at 3), both of which he made within his 112-day window for federal habeas claims); however, under the circumstances presented, the relation-back doctrine only saves "a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading," Fed. R. Civ. P. 15(c)(1)(B).

In the context of a habeas petition, "conduct, transaction, or occurrence" does not mean a petitioner's entire trial or sentencing. Mayle v. Felix, 545 U.S. 644, 664 (2005). Instead, only newly-proposed claims linked as to "'time and type'" with timely claims relate back. Pittman, 209 F.3d at 318 (quoting United States v. Craycraft, 167 F.3d 451, 457 (8th Cir. 1999)). Petitioner's proposed new claims (described in the opening

---

[14] Petitioner's effort to obtain review of his second MAR by the North Carolina Supreme Court (which that court rejected on February 3, 2011 (see Docket Entry 8, Ex. 15)) did not result in further tolling. See Gray v. Lewis, No. 1:11CV91, 2011 WL 4022787, at *2 (M.D.N.C. Sept. 9, 2011) (unpublished) (citing cases), recommendation adopted, slip op. (M.D.N.C. Nov. 4, 2011). In any event, granting Petitioner the benefit of tolling for the maximum additional 62 days between December 3, 2010, and February 3, 2011, would not make timely the proposed new claims (submitted on February 1 and March 23, 2012, respectively).

paragraph of this subsection) differ in "time and type" from Grounds One through Five (described in Subsections V.A. through V.E.).[15] As a result, Section 2244(d)(1) bars Petitioner's proposed new claims and renders futile his attempt(s) to add them.

Alternatively, the Court denies Petitioner leave to add his proposed new claims on grounds of procedural default. Specifically, Petitioner failed to raise the claims at issue on direct appeal (see Docket Entry 8, Ex. 2) or in his MARs (see id., Exs. 7, 11), and North Carolina law would bar him from now doing so (resulting in a procedural bar in this Court, as well), see Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). Moreover, Petitioner has failed to make a showing adequate to excuse his procedural default. (See Docket Entries 27, 29, 34, 36, 37, 41.)[16]

---

[15] "[I]t is not sufficient that the new claim simply has the same form as the original claims . . . . Thus, 'a petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance.'" Ingram, 2011 WL 836826, at *7 (quoting United States v. Ciampi, 419 F.3d 20, 24 (1st Cir. 2005)); accord United States v. Gonzalez, 592 F.3d 675, 679-80 (5th Cir. 2009); Lowery, 2012 WL 2395192, at *4. Despite numerous chances, Petitioner has not articulated any theory that would allow his proposed new claims to relate back to his timely claims. (See Docket Entries 27, 29, 34, 36, 37, 41.) Nor do any of Petitioner's filings regarding these claims expressly seek equitable tolling under Holland v. Florida, 560 U.S. 631, 649 (2010). (See Docket Entries 27, 29, 34, 36, 37, 41.) To the extent Petitioner's references to his lack of legal training and law library access (see Docket Entry 36 at 2, 3, 7, 8) impliedly request such tolling, he does not qualify for relief, see United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004); Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2001); Gray v. Lewis, No. 1:11CV91, 2011 WL 4022787, at *3 (M.D.N.C. Sept. 9, 2011) (unpublished) (citing cases), recommendation adopted, slip op. (M.D.N.C. Nov. 4, 2011). Finally, Petitioner's conclusory assertions of innocence of attempted first-degree murder (see Docket Entry 36 at 2, 8) do not meet the standard set by McQuiggin v. Perkins, ___ U.S. ___, 133 S. Ct. 1924 (2013), for exemption from Section 2244(d)(1). See Wilson v. Perry, No. 1:14CV576, 2014 WL 4685405, at *2 (M.D.N.C. Sept. 19, 2014) (unpublished), appeal dismissed, ___ F. App'x ___, 2014 WL 7014340 (4th Cir. 2014).

[16] As noted above, one of Petitioner's filings did cite Trevino and Martinez, two recent decisions by the United States Supreme Court that "addressed
(continued...)

-29-

Finally, Petitioner has filed two other motions that effectively seek to add two more claims: 1) that the prosecution allowed a witness to give perjured testimony before the state grand jury that returned indictments against Petitioner (Docket Entry 49 at 2-5); and 2) Petitioner's trial counsel provided ineffective assistance at sentencing by failing to call character witnesses and to provide the trial court with evidence of the pre-trial plea offer Petitioner had received (and rejected) (Docket Entry 61 at 1-3). These claims appear to suffer from the same untimeliness- and procedural default-related defects that rendered the other, above-discussed amendment attempts futile; however, no reason exists to defer action on these motions to allow Petitioner to address those threshold issues, because the patent deficiency of these proposed claims warrants denial of leave to amend. See <u>Woodruff v. Warden</u>

---

<sup>16</sup>(...continued)
whether a procedural bar . . . should apply to an ineffective assistance of counsel claim [omitted] from a state habeas proceeding," <u>Wilson v. Perry</u>, No. 1:14CV576, 2014 WL 4685405, at *1 (M.D.N.C. Sept. 19, 2014) (unpublished), <u>appeal dismissed</u>, ___ F. App'x ___, 2014 WL 7014340 (4th Cir. 2014). Petitioner, however, cannot benefit from these cases because he has "failed to demonstrate that his underlying [proposed new ineffective assistance] claim was a substantial one, as required under <u>Martinez</u> [and, by extension, <u>Trevino</u>] to overcome a procedural default. In particular, the contention that [Petitioner would have pleaded guilty but for his trial counsel's bad advice] is too implausible." <u>Jones v. Franke</u>, ___ F. App'x ___, ___, 2014 WL 6985630, at *1 (9th Cir. 2014); <u>see also</u> <u>Merzbacher v. Shearin</u>, 706 F.3d 356, 367 (4th Cir. 2013) ("[A petitioner's] self serving assertion that he would have accepted [a pre-trial] plea is . . . the type of testimony subject to heavy skepticism." (internal ellipses and quotation marks omitted)). Notably, Petitioner has averred that, "[w]hen [his trial counsel] came to [him] with the State's proposed plea agreement, imposing consecutive sentences for two counts of discharging a weapon into an occupied property, [Petitioner] turned down the offer because [he] knew [he] was guilty, at worst, of only one count." (Docket Entry 11-1 at 7.) Petitioner then avers that he would have pleaded guilty, <u>not</u> had he received better advice, but rather only had he "known that [his trial counsel] was going to intentionally botch [his] trial . . . ." (<u>Id.</u>; <u>see also</u> <u>id.</u> (failing to show that trial counsel "intentionally botch[ed] [Petitioner's] trial").) Under these circumstances, <u>Trevino</u> and <u>Martinez</u> do not allow Petitioner to escape his procedural default of his proposed new ineffective assistance claim.

of Perry Corr. Inst., C.A. No. 9:07-2739-PMD-GCK, 2008 WL 4200291, at *5 (D.S.C. Sept. 8, 2008) (unpublished) ("[The] [p]etitioner's proposed new claim . . . is clearly devoid of legal merit, and allowing him leave to amend his § 2254 petition to add such a claim would be futile.  Therefore, [his] Motion to Amend is denied.").

Petitioner's proposed grand jury perjury claim fails as a matter of law because "[t]here is no federal constitutional right to a grand jury in a state criminal prosecution and thus a claim of deficiency in the [state grand jury] proceeding is not cognizable in a [federal] habeas corpus proceeding.  This rule applies to claims of perjury." May v. Warden, No. 07Civ. 2176(BSJ)(GWG), 2010 WL 1904327, at *3 (S.D.N.Y. May 10, 2010) (unpublished) (internal citations and quotation marks omitted).  Additionally, "any indictment defect generated by alleged perjured [grand jury] testimony was cured by the [petit] jury's verdict that [Petitioner] was guilty of th[ese] offense[s]." United States v. Combs, 369 F.3d 925, 936 (6th Cir. 2004); accord United States v. Brown, 396 F. App'x 328, 329 (8th Cir. 2010); May, 2010 WL 1904327, at *3.

Likewise, Petitioner's proposed ineffective assistance at sentencing claim lacks merit because Petitioner has not shown that either knowledge of pre-trial plea offers or any unidentified character witness testimony held any reasonable prospect of altering the trial court's sentencing decision.  (See Docket Entry 61 at 1-3.)  Instead, Petitioner merely asserts in conclusory fashion that such matters "very well could have made a difference in the outcome of the sentencing phase of Petitioner's trial."

(Id. at 3.)  Such a claim cannot succeed.  See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrogated on other grounds, Gray v. Netherland, 518 U.S. 152, 165-66 (1996); see also Harrington, 562 U.S. at ___, 131 S. Ct. at 788 ("[T]he standard for judging counsel's representation is a most deferential one.").

## VI.  Conclusion

Petitioner has not established entitlement to habeas relief.

**IT IS THEREFORE ORDERED** that Petitioner's Motion for Expansion of the Record (Docket Entry 19), Motion Requesting Leave: To Request Production of Documents (Docket Entry 20), Motion Requesting Leave for Production of Documents/Motion to Expand the Record (Docket Entry 24), Motion to Amend (Docket Entry 27), Motion for Expansion of the Record/Motion Requesting Leave: To Request Production of Documents (Docket Entry 29), Motion to Amend (Docket Entry 34), Motion to Amend New Case Laws by United States Supreme Court (Docket Entry 37), Motion to Amend (Docket Entry 49), Motion to Expand the Record and Amend (Docket Entry 61), and Motion to Expand Record/Motion to Amend (Docket Entry 62) are **DENIED.**

**IT IS FURTHER ORDERED** that Respondent's Motions for Summary Judgment (Docket Entries 7, 14) are **GRANTED**, the Petition as amended (Docket Entries 2, 11-1) is **DENIED,** and Judgment shall be entered dismissing this action without issuance of a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

December 18, 2014